IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| JOANNE L. L.[1] | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 17-cv-01107-CJP[2] |
| | ) |
| COMMISSIONER OF SOCIAL SECURITY, | ) ) |
| | ) |
| Defendant. | ) |

## **MEMORANDUM and ORDER**

In accordance with 42 U.S.C. § 405(g), Joanne L. L. ("Plaintiff") seeks judicial review of the final agency decision denying her application for Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB") pursuant to 42 U.S.C. § 423.

## **Procedural History**

Plaintiff applied for SSI on May 12, 2014 and for DIB on June 10, 2014. (Tr. 165-72). She alleged a disability onset date of January 5, 2014. The Commission denied Plaintiff's application at the initial level and again upon reconsideration. (Tr. 52-89). She requested an evidentiary hearing thereafter, which Administrative Law Judge ("ALJ") P.H. Jung conducted on July 7, 2016. (Tr. 33-51). ALJ Jung reached an unfavorable decision on September 15, 2016. (Tr. 17-32). The Appeals Council denied Plaintiff's requested for review,

---

[1] The Court will not use plaintiff's full name in this Memorandum and Order in order to protect her privacy. See FED. R. CIV. P. 5.2(c) and the Advisory Committee Notes thereto.
[2] This case was assigned to the undersigned for final disposition upon consent of the parties pursuant to 28 U.S.C. § 636(c). See Doc. 25.

1

rendering the ALJ's decision the final agency decision, *Getch v. Astrue*, 539 F.3d 473, 480 (7th Cir. 2008). Plaintiff exhausted all of her administrative remedies and filed a timely Complaint in this Court. (Doc. 1).

## **Issues Raised by Plaintiff**

Plaintiff argues the ALJ's decision is erroneous because he mischaracterized the evidence related to her rheumatoid arthritis and did not accommodate her limitations related to arthritis in the residual functional capacity assessment.

## **Applicable Legal Standards**

To qualify for SSI or DIB, a claimant must be disabled within the meaning of the applicable statutes.[3] For these purposes, "disabled" means the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

A "physical or mental impairment" is an impairment resulting from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. 42 U.S.C. § 423(d)(3). "Substantial gainful activity" is work activity that involves doing

---

[3] The statutes and regulations pertaining to Disability Insurance Benefits (DIB) are found at 42 U.S.C. § 423, et seq., and 20 C.F.R. pt. 404. The statutes and regulations pertaining to SSI are found at 42 U.S.C. §§ 1382 and 1382c, et seq., and 20 C.F.R. pt. 416. As is relevant to this case, the DIB and SSI statutes are identical. Furthermore, 20 C.F.R. § 416.925 detailing medical considerations relevant to an SSI claim, relies on 20 C.F.R. Pt. 404, Subpt. P, the DIB regulations. Most citations herein are to the DIB regulations out of convenience.

significant physical or mental activities, and that is done for pay or profit. 20 C.F.R. § 404.1572.

Social Security regulations set forth a sequential five-step inquiry to determine whether a claimant is disabled. The Seventh Circuit Court of Appeals has explained this process as follows:

> The first step considers whether the applicant is engaging in substantial gainful activity. The second step evaluates whether an alleged physical or mental impairment is severe, medically determinable, and meets a durational requirement. The third step compares the impairment to a list of impairments that are considered conclusively disabling. If the impairment meets or equals one of the listed impairments, then the applicant is considered disabled; if the impairment does not meet or equal a listed impairment, then the evaluation continues. The fourth step assesses an applicant's residual functional capacity (RFC) and ability to engage in past relevant work. If an applicant can engage in past relevant work, he is not disabled. The fifth step assesses the applicant's RFC, as well as his age, education, and work experience to determine whether the applicant can engage in other work. If the applicant can engage in other work, he is not disabled.

*Weatherbee v. Astrue*, 649 F.3d 565, 568-569 (7th Cir. 2011).

Stated another way, it must be determined: (1) whether the claimant is presently unemployed; (2) whether the claimant has an impairment or combination of impairments that is serious; (3) whether the impairments meet or equal one of the listed impairments acknowledged to be conclusively disabling; (4) whether the claimant can perform past relevant work; and (5) whether the claimant is capable of performing any work within the economy, given his or her age, education and work experience. 20 C.F.R. § 404.1520; *Simila v. Astrue*, 573 F.3d 503, 512-513 (7th Cir. 2009); *Schroeter v. Sullivan*, 977 F.2d 391, 393 (7th

Cir. 1992).

If the answer at steps one and two is "yes," the claimant will automatically be found disabled if he or she suffers from a listed impairment, determined at step three. If the claimant does not have a listed impairment at step three, and cannot perform his or her past work (step four), the burden shifts to the Commissioner at step five to show that the claimant can perform some other job. *Rhoderick v. Heckler*, 737 F.2d 714, 715 (7th Cir. 1984). *See also Zurawski v. Halter*, 245 F.3d 881, 886 (7th Cir. 2001) (Under the five-step evaluation, an "affirmative answer leads either to the next step, or, on Steps 3 and 5, to a finding that the claimant is disabled. . . . If a claimant reaches step 5, the burden shifts to the ALJ to establish that the claimant is capable of performing work in the national economy.").

This Court reviews the Commissioner's decision to ensure that the decision is supported by substantial evidence and that no mistakes of law were made. It is important to recognize that the scope of review is limited. "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). Thus, this Court must determine not whether plaintiff was, in fact, disabled at the relevant time, but whether the ALJ's findings were supported by substantial evidence and whether any errors of law were made. See, *Books v. Chater*, 91 F.3d 972, 977-78 (7th Cir. 1996) (citing *Diaz v. Chater*, 55 F.3d 300, 306 (7th Cir. 1995)). This Court uses the Supreme Court's definition of substantial evidence, i.e., "such relevant

evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

In reviewing for "substantial evidence," the entire administrative record is taken into consideration, but this Court does <u>not</u> reweigh evidence, resolve conflicts, decide questions of credibility, or substitute its own judgment for that of the ALJ. *Brewer v. Chater*, 103 F.3d 1384, 1390 (7th Cir. 1997); *Moore v. Colvin*, 743 F.3d 1118, 1121 (7th Cir. 2014). However, while judicial review is deferential, it is not abject; this Court does not act as a rubber stamp for the Commissioner. See, *Parker v. Astrue*, 597 F.3d 920, 921 (7th Cir. 2010), and cases cited therein.

## The ALJ's Decision

ALJ Jung followed the five-step analytical framework set forth above. He found that Plaintiff met the insured status requirements through December 31, 2015 and had not engaged in substantial gainful activity since the alleged onset date. She had severe impairments of degenerative disc disease of the lumbar spine, rheumatoid arthritis, and chronic obstructive pulmonary disease. (Tr. 22). Plaintiff had the RFC to lift/carry 10 pounds occasionally and less than 10 pounds frequently; stand and/or walk for two hours out of an eight-hour workday; and sit for up to six hours in an eight-hour workday, with several additional limitations. Plaintiff was capable of performing past relevant work so the ALJ found her not disabled. (Tr. 23-27).

## The Evidentiary Record

The following summary is directed at Plaintiff's arguments.

### 1. *Agency Forms*

In her initial disability report, Plaintiff stated that rheumatoid arthritis and sacroilitis limited her ability to work. (Tr. 182). On some days, she could barely walk. Her hands cramped and her feet and legs swelled. No medication relieved her pain, which travelled from her hands to her wrists and shoulders. She sometimes tried to clean her home when her pain allowed it. She also fed her pets and let them outside. Plaintiff could prepare sandwiches and pizza a couple times a week. She performed light dusting and washed dishes every other day. Her daughter helped her clean and do laundry. Plaintiff went grocery shopping once a week for a couple of hours. Her hobbies included watching television, visiting with her grandchildren, and using the computer. She could only lift a few pounds and her ability to walk depended on whether her legs were swollen and/or painful. (Tr. 218-23).

### 2. *Medical Records*

Plaintiff presented to Dr. Cameron Gilmore on March 19, 2013 with leg cramps, consistent with intermittent claudication. Dr. Gilmore assessed Plaintiff with neuropathy in the bilateral anterior thighs that occurred intermittently three times a week. Plaintiff's symptoms were minimally responsive to Tylenol and heat. On exam, she demonstrated a normal range of motion, muscle strength, and stability in all extremities with no pain on inspection. (Tr. 391-94).

Plaintiff went to urgent care on November 24, 2013 with complaints of severe back pain that progressively worsened over the previous two days. She demonstrated a normal range of motion and tenderness on examination. Images of her lumbar spine showed no acute osseous abnormalities. The physician diagnosed her with low back pain and advised her to rest and change positions. She received prescriptions for Motrin for mild pain and Vicodin for severe pain. (Tr. 347-50).

Plaintiff saw Dr. Kristina Raveendran on November 25, 2013. She reported three days of back pain, which worsened when sitting up. On exam, Plaintiff was tender to palpation over the lumbar paraspinal muscles. A lumbar x-ray was normal. Dr. Raveendran suspected the pain derived from a muscle strain. She prescribed Plaintiff Flexeril to take as needed and gave her a handout about exercise. (Tr. 375-77).

Plaintiff presented to Dr. Gilmore on March 25, 2014 with leg pain and limb cramps. She stated her symptoms were fairly controlled, but she was still experiencing leg pain that worsened with exertion. On exam, she demonstrated a normal range of motion, muscle strength, and stability in all extremities with no pain on inspection. Dr. Gilmore referred Plaintiff to a neurologist. (Tr. 371-73).

Plaintiff presented to Dr. Muddasani Reddy on April 28, 2014. She complained of pain in her thighs that travelled down to her legs, which had been present for eight or nine months. Plaintiff also reported back pain. Dr. Reddy

7

assessed Plaintiff with rule out disc disease and advised her to follow up in four weeks. (Tr. 321-22).

Plaintiff saw Dr. Gilmore on May 6, 2014 and reported back pain, mainly in her right sacroiliac joint, and limb cramps. Flexeril and Motrin somewhat helped her back pain. She still experienced thigh pain in the mornings on most days and the pain had increased in duration, frequency, and intensity. She had also developed sharp pain in her right wrist, elbow, and shoulder that worsened with motion. Dr. Gilmore prescribed Plaintiff Flexeril for her back and referred her to rheumatology for her cramps. (Tr. 368-70).

Plaintiff visited the emergency room at St. Elizabeth's hospital on May 8, 2014 with complaints of right shoulder pain. She reported that her symptoms had occurred off and on for "a while" and that her pain was currently at a 10. On examination, Plaintiff demonstrated a normal range of motion and intact strength. X-rays showed no acute findings. The physician assessed Plaintiff with right shoulder pain, prescribed her Ultram, and discharged her with a sling. (Tr. 325-26).

An MRI of Plaintiff's lumbar spine from May 13, 2014 showed posterior disc extrusion at the L4-L5 level, eccentric towards the left side, causing left greater than right neural foraminal compromise and mild canal stenosis; tiny left posterior disc protrusion at the T12-L1 level without canal or neural foraminal stenosis; and multilevel mild facet hypertrophic osteoarthritic changes. (Tr. 590).

Plaintiff saw Dr. Gilmore on June 19, 2014 and complained of intermittent sharp pain in her thighs, lumbar disc herniation, and hand pain. On exam, she was positive for joint pain, joint swelling, muscle weakness, extremity weakness, neuropathy, and numbness in her extremities. She was negative for back pain. Dr. Gilmore opined Plaintiff should see a rheumatologist for her thigh pain, prescribed her Tramadol for her lumbar disc herniation, and ordered a rheumatoid factor for her hand pain. (Tr. 365-67).

Plaintiff received notice from Dr. Charles Robacker on June 25, 2014 that her rheumatoid arthritis test was abnormal. (Tr. 432).

Plaintiff saw Dr. Erynn Elleby on August 20, 2014. She complained of joint pain in her bilateral hands and feet. Dr. Elleby referred Plaintiff to a rheumatologist for a consultation. Plaintiff also reported chronic low back pain and lumbar disc herniation. Dr. Elleby referred her to a neurosurgeon. Dr. Elleby also prescribed Plaintiff's Mobic and Tramadol, which she used to control pain. (Tr. 535-37).

Nurse Julie Unk prepared a medical source statement on October 29, 2014. She opined Plaintiff was limited to occasionally lifting and/or carrying up to ten pounds due to rheumatoid arthritis and pain and swelling of the joints. She could stand for a total of one hour in an eight-hour workday and five to ten minutes without interruption. Plaintiff could sit for six hours in an eight-hour workday for an hour at a time without interruption. She was unable to complete an eight-hour workday without lying down. Plaintiff could never climb, balance,

stoop, crouch, kneel, or crawl. Joint pain affected Plaintiff's ability to reach, handle, and push/pull. (Tr. 437-39).

Images of Plaintiff's right shoulder from January 9, 2015 showed moderate erosive arthritis of the acromioclavicular joint, representing rheumatoid arthritis. Plaintiff received an injection in her right shoulder on January 15, 2015. (Tr. 449-50).

On February 2, 2015, Plaintiff went to the emergency room for dyspnea, influenza, and COPD. Although Plaintiff was not seeking treatment for her arthritis, the record from the visit characterizes Plaintiff's arthritis as "stable" and instructs her to continue her mediation. (Tr. 451-54).

On February 5, 2015, Dr. Elleby reviewed Ms. Unk's October 2014 medical source statement and agreed the opinions therein accurately reflected Plaintiff's ability to perform work-related functions. (Tr. 443).

Dr. Elleby reviewed Ms. Unk's October 2014 medical statement, again, on June 17, 2015 and stated that, based on her assessment of Plaintiff, Ms. Unk's opinions accurately stated Plaintiff's limitations. Dr. Elleby also added, however, that Plaintiff was receiving right shoulder injections and taking methotrexate. (Tr. 503).

Ms. Unk reassessed Plaintiff on July 24, 2015 and stated the opinions in her October 29, 2014 medical source statement remained the same. (Tr. 436).

Plaintiff saw Dr. Mark Chiawei Hwang on September 11, 2015 for her rheumatoid arthritis. She reported her disease had been active, noting stiffness

in her bilateral knees, shoulder, and hands, which lasted for hours. She also felt more joints were affected and she had significant joint pain in her shoulders, wrists, metacaropophalangeals ("MCPs"), and proximal interphalangeal joints ("PIPs"). On exam, she demonstrated tenderness and swelling of her second and third MCPs, and second and third PIP on her right. She had tenderness to palpation of her bilateral shoulders and over her bilateral knees. Dr. Hwan noted Plaintiff had high disease activity and was currently in flare. He also noted medication intolerance. Dr. Hwang wanted to explore biologic therapy and ordered films to determine whether her knee pain was due to arthritis or a ligamentous injury. He also prescribed Plaintiff prednisone for her acute flare. (Tr. 567-68).

Plaintiff followed-up with Dr. Hwang on January 22, 2016 for her rheumatoid arthritis. She reported her symptoms improved since taking Humira, particularly in her stiffness, swelling, and arthralgias. The length of symptoms had not decreased significantly, but their severity improved considerably. She noted a localized reaction from her injection sites. Examination revealed tenderness without swelling over her bilateral MCPs, PIPs, and wrists. Dr. Hwang prescribed her leflunomide and gave her Voltaren gel samples. (Tr. 562-63).

On February 8, 2016, Plaintiff reported her Humira injections were not helping her arthritis. She was having significant issues with pain that kept her up at night. (Tr. 579-82).

Plaintiff saw Hwang on April 22, 2016. She reported some improvement with Humira, particularly in her swelling. The length of her symptoms had not decreased significant but the severity of her symptoms improved considerably. The past month, Plaintiff had increased stiffness over her bilateral arms from her should to her hands. She noted decreased swelling since taking leflunomide but her stiffness lasted for hours on a daily basis and limited the use of her hands. On exam, Plaintiff demonstrated tenderness to palpation and swelling of MCPs, PIPs, wrists, and elbows. Her injection site reaction improved. Dr. Hwang started Plaintiff on leflunomide and Enbrel. (Tr. 559-61).

## **Analysis**

Plaintiff argues the ALJ mischaracterized the medical evidence related to her rheumatoid arthritis and ultimately failed to create an RFC that fully accounted for her limitations associated with the disease.

"The ALJ must evaluate the record fairly." *Golembiewski v. Barnhart*, 322 F.3d 912, 917 (7th Cir. 2003). Although the ALJ need not discuss every piece of evidence, he may not ignore an entire line of evidence contrary to his ruling. *Id.* "Otherwise it is impossible for a reviewing court to tell whether the ALJ's decision rests upon substantial evidence." *Id.*

ALJ Jung found that Plaintiff's arthritis is a severe impairment but he did not include any limitations with handling or fingering in the RFC. Plaintiff asserts this is erroneous because the ALJ found her not disabled because she could perform her past work as a billing clerk, which requires constant handling and

12

fingering. In regards to Plaintiff's rheumatoid arthritis, the ALJ states that Plaintiff's musculoskeletal examinations were mostly normal and that she demonstrated "no misalignment, asymmetry, crepitation, defects, masses, effusions, decreased range of motion, instability, atrophy or abnormal strength, tone or joint swelling in the extremities." (Tr. 24). This is inaccurate. Plaintiff was positive for tenderness and swelling during multiple examinations and demonstrated muscle weakness. (Tr. 559-61; 562-63; 567-68; 365-67). Plaintiff's physician also noted "high disease activity" after one examination. (Tr. 567-58). The ALJ fails to mention any of this evidence and his conclusion that Plaintiff's examinations did not demonstrate positive findings is erroneous.

The ALJ further explains Plaintiff responded well to medications and reported improvement with shoulder pain after injections. ALJ Jung states, "All indications are that occasional arthritic flares are successfully treated with maximizing anti-inflammatory protocol . . ." (Tr. 24). This characterization of the record is also inaccurate. On September 11, 2015, Plaintiff stated the arthritis was affecting more joints. She had significant joint pain and stiffness that lasted for hours. Dr. Hwang noted Plaintiff demonstrated medication intolerance. (Tr. 567-68). On January 22, 2016, Plaintiff reported that Humira helped her symptoms, (Tr. 562-53), but in February 2016 Plaintiff said that Humira was *not* helping and she had significant issues with pain that kept her up at night. (Tr. 579-82). In April 2016 Plaintiff reported some improvement with Humira, but she continued to experience stiffness that limited the use of her

13

hands. (Tr. 559-61). Again, the ALJ fails to address portions of the record that are favorable to Plaintiff and inaccurately opines that medication successfully alleviated Plaintiff's symptoms.

In sum, the ALJ erroneously sets forth a selective review of the record. "An ALJ has the obligation to consider all relevant medical evidence and cannot simply cherry-pick facts that support a finding of non-disability while ignoring evidence that points to a disability finding." *Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010). The ALJ did not fairly review the record, so the Court cannot tell whether substantial evidence supports the decision. Remand is required.

The Court also finds troubling the ALJ's focus on Plaintiff's improved symptoms and "stable" condition. An improvement in symptoms or stable condition does not necessarily indicate an ability to perform full-time work. *See Murphy v. Colvin*, 759 F.3d 811, 819 (7th Cir. 2014). On remand, the ALJ should be cautious not to equate those characterizations of Plaintiff's condition with a finding of not-disabled.

### Conclusion

The Commissioner's final decision denying plaintiff's application for social security disability benefits is **REVERSED** and **REMANDED** to the Commissioner for rehearing and reconsideration of the evidence, pursuant to sentence four of 42 U.S.C. § 405(g).

The Clerk of Court is directed to enter judgment in favor of Plaintiff.

**IT IS SO ORDERED.**

**DATE:** September 20, 2018.

                                      <u>**s/Clifford J. Proud**</u>
                                      **CLIFFORD J. PROUD**
                                      **UNITED STATES MAGISTRATE JUDGE**